**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heidi S Hall, | No. CV-24-08101-PCT-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Doug Burgum, | |
| Defendant. | |

Pending before the Court is Defendant the Secretary of the Department of Interior's (the "Secretary") Motion to Dismiss Plaintiff Heidi Hall's complaint for failure to state a claim. (Doc. 11.)  For the reasons explained below, the Secretary's motion is **granted in part and denied in part**.

## I.    BACKGROUND

These facts are derived from the Complaint, which are assumed as true for purposes of this motion to dismiss, and from documents subject to judicial notice.  Hall, who is a "white female, age 58," was employed by the Department of Interior National Park Service (the "Park Service") as a Special Agent in the Glen Canyon National Recreation Area in Page, Arizona.  (Doc. 1 ¶¶ 1, 6.)  She alleges that a male counterpart with five years' less experience than her was promoted instead of her.  (*Id.* ¶ 20.)  She also alleges the Park Service has a "pattern and practice of different treatment" based on sex and age.  (*Id.* ¶ 21.)

### A.    Allegations in October 2018 EEO Complaint

Hall filed two Equal Employment Opportunity ("EEO") complaints in which she

alleged the Park Service discriminated against her based on her sex and age, and retaliated against her. (*Id.* ¶ 7.)  In her October 2018 EEO Complaint, she alleged the Park Service had a "long Pattern & Practice of not promoting females and older applicants," identifying previous occasions in which a "younger white male" applicant was selected for various leadership positions instead of an "older female" or other "diverse candidates." (*See* Doc. 1-1 at 9–10.)  In August 2014, for example, a "younger white male" was chosen over Hall and a "seasoned, veteran [older male] Agent" for an Assistant Special Agent in Charge ("ASAC") position, and she was told the applicant chosen instead of her was in his "first supervisor job," whereas Hall "had a management career and supervised many employees in four different companies, and oversaw various departments in those companies" before being hired by the Park Service. (*Id.* at 10–11.)  Hall also stated she had experience as an ASAC on a temporary basis while another employee was on leave, and Hall had also been "the rotated law enforcement patrol Shift Lead and was assigned as incident Commander on incidents while a U.S. Park Ranger." (*Id.* at 10.)

Hall later discovered that one of the members of the hiring panel for the ASAC position had rated her at the "top of his rated list" and the younger male applicant below her, and the panel member was "shocked to learn" the younger male applicant was hired over Hall. (*Id.* at 11.)  Another panel member appeared surprised by information about Hall's management experience when asking other employees whether Hall would be a good supervisor, leading Hall to conclude that he "either completely disregarded [her] resume, or did not consider it fairly in rating [her] during the hiring panel process." (*Id.*)  Later, after "problems with [the younger male's] job performance persisted," the Special Agent in Charge ("SAC") told Hall that he was "sorry and he did the best he could [to hire someone] 'based on the Hiring Panel's recommendations.'" (*Id.*)

Hall then actively sought "an official supervisory law enforcement [d]etail to gain the experience [the SAC] told her she needed" to be hired for the next ASAC position. (*Id.* at 12.)  To that end, she "expressed interest[] when approached about [a] possible . . . Chief Ranger Detail," but she "learned [a male] co-worker . . . was suddenly and unexpectedly

1    being pressured by his then-supervisor . . . to state that he was interested in the" same

2    position.  (*Id.*)  Hall believes the supervisor pressuring her co-worker "worked so hard to

3    prevent her from getting a supervisory law enforcement [d]etail" because of a disrespect

4    for women.  (*See id.* at 12–13.)

5        Nonetheless, Hall "received a Deputy/Assistant Chief Ranger official 120-day

6    Detail" from June to September 2016.  (*Id.* at 13.)  In this position, Hall "took as many

7    supervisory trainings . . . as she could find" and "gained the additional supervisory law

8    enforcement experience she was told she needed" to be promoted to the ASAC position.

9    (*Id.*)

10        After this, she reported to the SAC certain "illegal issues she had learned of" while

11    on a different short detail in May 2016.  (*Id.*)  Hall did "not know if those issues were

12    addressed or not."  (*Id.*)  She also reported to the SAC her belief that another employee

13    "did not seem to like her and possibly had a personal vendetta against her," such that she

14    would have "real concerns if [the employee] were ever to be a part of any hiring process

15    where [Hall] had applied for any position."  (*Id.*)

16        That same year, Hall applied for a new ASAC vacancy, which had different

17    application questions than those for the previous vacancy.  (*Id.* at 14.)  Hall was thus "not

18    able to rate herself as high as she did for the previous ASAC hire application."  (*Id.*)  She

19    then "learned she did not make the Certification list . . . in order to be considered for the

20    job."  (*Id.*)  Although Hall initially believed this was due to how she rated herself, a Human

21    Resources employee told her that she was not added to the certification list for the ASAC

22    and another vacancy because her resumé was too long.  (*Id.*)    After requesting

23    reconsideration, however, Hall was added to the certification list.  (*Id.*)

24        In December 2016, a "younger white male" was chosen for the ASAC opening.  (*Id.*

25    at 15.)  Hall alleges the male applicant had experience she did not have, but this "experience

26    was not addressed in the Vacancy Announcement or Applicant Questionnaires . . . and

27    therefore was not a pre-requisite for the position."  (*Id.*)  Hall believed that the male

28    applicant was nevertheless given credit for this experience, from which she inferred the

possibility that the "Applicant Questionnaire was catered in advance to this 'pre-selected' younger white male for the position," a conclusion that other employees later expressed to Hall.  (*Id.*)  Hall was told by another employee that, but for the additional experience the "younger white male" had, she was more qualified than the male applicant for the position, and other employees "did not believe [the male applicant] was legitimately more qualified than all of the other 142 applicants who applied," including a male "seasoned, veteran Agent" who was "overlooked for this position."  (*Id.*)

In January 2017, Hall was offered a detail in an ASAC position that would be "rotated" between her and other employees until the position could be filled.  (*Id.* at 16.) During this detail, Hall "took as many supervisory trainings . . . as she could find" and "earned the respect" of other employees.  (*Id.*)  The SAC "gave [Hall] the highest rating across the board in her yearly performance evaluation."  (*Id.*)  However, a male coworker "was allowed to attend the Chief Ranger's Conference instead of her, which some employees thought was unusual."  (*Id.*)  And, once she was rotated off the position, her name was "immediately removed from the Payment Net credit card system as an approving supervisor" even though male acting ASACs "remained in the system as supervisors." (*Id.*)

In November 2017, Hall "applied for and attended the [National Park Service] Leadership Academy to fulfill the rest of the experience she had previously been told by [the SAC] she was lacking."  (*Id.*)  The SAC who approved the training told Hall he "thought it would be helpful towards her career goals."  (*Id.* at 17.)

In 2018, two ASAC vacancies were posted, and Hall applied for and expressed interest in both positions.  (*Id.*)  Unlike the previous application that Hall completed, these application questions "were reasonable to the positions," and Hall was "able to rate herself fairly high."  (*Id.*)  Around this time, however, a Special Agent vacancy was posted for the duty station of another Special Agent applicant for the ASAC vacancy, which made some employees "believe[] this was an indication he was the 'pre-selection' for the ASAC position" because the Special Agent position would need to be back-filled.  (*Id.*)

Then, during a conversation with Human Resources concerning Hall's application,

a female Human Resources employee stated "[i]f they wanted you, they would have hired you already"; "[i]t's a little sexist around here"; and "[w]e know they just hire who they want around here." (*Id.*)  This employee "suddenly and without notice, left her H.R. job . . . while [she was] reviewing the applications for the Cert[ification list] for the" two ASAC positions. (*Id.*)  Hall later learned that another female applicant who was "experienced in criminal investigations," but had "recently reported" another employee's commission of a felony, did not make the certification list to be considered for the ASAC position. (*Id.*)

In August 2018, a panel interviewed Hall for the ASAC position, although she alleges one panel member "knew and worked with most of the candidates and could not be objective" concerning Hall, as the panel member "did not personally like" Hall. (*Id.* at 18.) Hall alleges she "share[d] her concerns" about this panel member with the SAC and was told that the SAC shared this information with a different panel member, but the panel member about whom Hall complained remained on the panel. (*Id.*)  Ultimately, two "younger white males were promoted" to the ASAC positions instead of Hall. (*Id.*)  She alleges "[t]wo other younger females, an openly homosexual older male, and an Asian male were also overlooked for these positions." (*Id.*)  Hall "believes the two younger white males were pre-selected for both positions." (*See id.* at 18–19.)

Hall also alleges that there has been a "history of younger white males being given preferential treatment; opportunities and advantages to be set up for success and eventual promotions to ASAC positions." (*Id.* at 20.)  Hall alleges "management kept 'moving the goal posts' so she couldn't quite" reach the necessary requirements to be promoted. (*Id.*)  She further alleges that "management . . . pretended to be supportive of [her] goals to become an ASAC, but simultaneously worked behind the scenes to prevent it from happening." (*Id.*)

After Hall filed her EEO complaint and during the EEO informal investigation, the EEO counselor "reached out to some of the members involved in the interview process for the recent ASAC hires." (*Id.* at 22.)  One panel member stated that the "panel was leaning

towards 2 other candidates." (*Id.*)  Another stated that Hall "did not have as much Undercover Experience as some of the other candidates," but Hall alleges she was prevented from gaining undercover experience because of her age and that the most recent ASAC in the position "had not been an undercover agent before being allowed to supervise." (*Id.*)  That panel member also stated Hall received a bad reference from a temporary detail, but Hall alleges she received positive feedback after leaving that detail, and the person Hall listed as a reference from that detail was never contacted.  (*Id.* at 23.) Hall alleges that, in fact, the SAC and panel member were told by leadership from that detail that, if there was negative feedback against Hall, it was "purely based on retaliation" for complaints Hall made concerning "violations . . . committed by park managers." (*Id.*) Finally, the panel member asserted Hall "lacked unique knowledge of [a] border park . . . that other candidates had," but Hall "specifically visited that park . . . and supervised . . . agents who worked at that border park for four months." (*Id.*)

## B.    Administrative Proceedings

On August 24, 2018, before Hall submitted her October 2018 EEO Complaint, she contacted an EEO counselor.  (*Id.* at 3.)  On August 29, 2018, Hall submitted a designation for counsel to be her representative during the administrative process.  (*Id.* at 24.)  On September 21, 2018, the Park Service sent a Notice of Final Interview and Right to File a Discrimination Complaint letter to Hall (the "NOFI Letter").  (*Id.* at 7.)  Hall signed the NOFI Letter on September 24, 2018, indicating that she read and understood the information in the letter.  (*Id.* at 8.)

Hall filed the October 2018 EEO Complaint in mid-October.  (*Id.* at 3 (dated October 9, 2018); Doc. 1-2 at 2 (stating that Hall filed the complaint on October 10, 2018).) On October 16, 2018, the Park Service issued a Notice of Acceptance Letter in which the Park Service accepted two claims for investigation: whether Hall was discriminated against on the bases of sex and age when she was not selected for the two ASAC positions in August 2018.  (Doc. 1-2 at 2.)

In mid-July 2020, Hall filed a second EEO complaint.  (Doc. 1 ¶ 7; Doc. 11-2 at

17.)  The Park Service accepted for investigation whether Hall was discriminated against on the bases of sex and age and retaliated against when she was not selected for an ASAC position in April 2020.  (Doc. 11-2 at 17.)  These two complaints were later consolidated.  (Doc. 1 ¶ 9.)

During the administrative process, the Administrative Law Judge ("ALJ") for the Equal Employment Opportunity Commission ("EEOC") ruled in favor of the Park Service.  (Doc. 1 ¶ 9.)  The Park Service then "issued a final order implementing the [ALJ's] finding of no discrimination."  (*Id.* ¶ 10.)  Hall appealed the decision, and the EEOC affirmed.  (*Id.* ¶¶ 10–11.)  Hall requested reconsideration, which the EEOC denied.  (*Id.* ¶¶ 12–13.)

## II.    PROCEDURAL HISTORY

On May 20, 2024, Hall filed her Complaint, asserting claims for retaliation and "Pattern and Practice-Sex/Age/Retaliation."  (*See id.* ¶¶ 24–60.)

On November 4, 2024, the Secretary filed the Motion to Dismiss.  (Doc. 11.)  On December 18, 2024, Hall responded, (Doc. 14), and on December 26, 2024, the Secretary replied, (Doc. 15).

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In making this determination, the Court does not accept legal conclusions as true, nor does the Court consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks omitted)).  That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  A "well-pleaded complaint may proceed even

1    if" actual proof of those facts "is improbable[] and . . . a recovery is very remote and

2    unlikely." *Id.* at 556 (quotation marks omitted).

3    **IV.    DISCUSSION**

4    **A.    Causes of Action in the Complaint**

5    Before addressing the merits of the Secretary's motion, it must be noted Hall does

6    not clearly and distinctly identify her claims in the Complaint—there are no express causes

7    of action or counts. (*See generally* Doc. 1.) She included headings for "Retaliation" and

8    "Pattern and Practice-Sex/Age/Retaliation," which presumably constitute her asserted

9    causes of action, (*see id.* at 5, 7), but her response to the Secretary's motion suggests she

10   also intended to assert claims for a hostile work environment and individual discrimination,

11   (*compare* Doc. 11 at 12–14, 16–17 (arguing the complaint fails to state hostile work

12   environment and age discrimination claims), *with* Doc. 14 at 3–4 (responding to

13   argument)). The ambiguity of Hall's claims complicates resolution of the Secretary's

14   motion, especially because pleadings of parties represented by counsel—as Hall is—are

15   not construed liberally. *See Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023)

16   (noting that, although "there is a good reason that [courts] afford leeway to pro se parties,

17   who appear without counsel and without the benefit of sophisticated representation," this

18   "logic does not apply to practicing attorneys, nor should the grace extend to them");

19   *Johnson v. City of Atwater*, 2017 WL 1383283, at *4 (E.D. Cal. 2017) ("The plaintiff is the

20   master of his complaint and can choose which claims he will pursue in this action and

21   which he chooses not to pursue. Additionally, Plaintiffs in this action are represented by

22   counsel and, therefore, the Court does not liberally construe the complaint.").

23   Causes of action will not be inferred from the Complaint, particularly where they

24   involve different elements and require a distinct analysis from those expressly pled. *See*

25   *Fernandez v. N. Kern State Prison*, 2016 WL 7324708, at *7 (E.D. Cal. 2016) ("A

26   complaint that meets Rule 8 standards alleges the claim or claims that it states explicitly;

27   not the claims that might be inferred from the facts. . . . It is not the job of the Defendants

28   or the court to anticipate legal theories for relief where none are made express."); *see also*

*Kwesele v. King County*, 2019 WL 1922928, at *1 (W.D. Wash. 2019) ("Hostile work environment claims are distinct claims, with distinct elements, and must be analyzed separately from discrimination and retaliation claims."); *Holmes v. Tenderloin Hous. Clinic, Inc.*, 772 F. Supp. 2d 1074, 1094 (N.D. Cal. 2011) ("Claims of harassment and retaliation are distinct from claims of discrimination.").

Hall is thus deemed to have only asserted the retaliation and pattern-and-practice claims expressly raised in her Complaint. *See Gifford v. Hornbrook Fire Prot. Dist.*, 2021 WL 4168532, at *17 n.21 (E.D. Cal. 2021) ("Plaintiff's opposition is not an opportunity to add new claims."); *Johnson*, 2017 WL 1383283, at *4 ("[T]he Court finds that the claims being pursued in this action are those specifically identified in the causes of action set out within the first amended complaint."); *Hanline v. County of Ventura*, 2016 WL 11746158, at *5 (C.D. Cal. 2016) (dismissing claims even though the complaint's "allegations leave open the possibility" of torts that could survive the ground for dismissal, because "the Court is limited to the claims alleged in Plaintiff's complaint"). To the extent Hall desires to assert additional causes of action beyond what she will be given leave to amend, as discussed below, she may move for leave, or seek the Secretary's consent, to amend. *See* Fed. R. Civ. P. 15(a)(2); LRCiv 15.1.

## B.    Consideration of Materials Outside of the Complaint

Both parties' requests to consider certain materials attached to their briefing that are outside the Complaint require analysis before turning to the merits of the Secretary's motion.

### 1.    Documents Attached to the Secretary's Motion to Dismiss

The Secretary requests that the Court take judicial notice of several exhibits attached to his motion, which include (1) the Park Service's October 16, 2018 Notice of Acceptance Letter to Hall and relevant certified mail receipts, (2) the Park Service's September 21, 2018 NOFI Letter to Hall, (3) Hall's August 29, 2018 Designation of Representative, (4) the September 21, 2018 EEO Report of Counseling, (5) the Park Service's August 27, 2020 Notice of Acceptance Letter to Hall, and (6) the July 7, 2020 EEO Report of Counseling.

(Doc. 11-2.)  The Secretary appended these documents to a declaration by the Secretary's counsel authenticating the documents.  (Doc. 11-1.)  The Secretary argues these documents are subject to judicial notice as "matters of public record" because they constitute the "administrative record of a plaintiff's claims before the EEO."  (Doc. 11 at 2 n.1.)  Hall argues the Secretary's counsel cannot authenticate these documents because he "does not claim to have any personal knowledge of the underlying creation, gathering, or storing of the selected records he attached."  (Doc. 14 at 9.)  She further argues EEO records are not public record.  (*Id.* at 9–10.)

Taking judicial notice of the first three documents is unnecessary because Hall attached copies of these documents to her Complaint.  (*See* Doc. 1-1 at 7–8 (September 21, 2018 NOFI Letter), 24 (August 29, 2018 Designation of Representative); Doc. 1-2 (October 16, 2018 Notice of Acceptance Letter and certified mail receipts).)  *See, e.g.*, *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint.  These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." (citation omitted)).  The remaining EEO records are subject to judicial notice.  *See, e.g.*, *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies." (citation omitted)) *Mosley v. Del Toro*, 2022 WL 20652531, at *1 n.2 (S.D. Cal. 2022) ("Official records from Plaintiff's EEO proceeding are proper subjects of judicial notice."); *Wallace v. DeJoy*, 2022 WL 14746303, at *3 (C.D. Cal. 2022) (taking judicial notice of EEO records as "matters of public record").  Thus,  these documents may be considered without converting the Secretary's motion to dismiss into a motion for summary judgment.  *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (stating that the "two exceptions" to the rule that courts may not consider "material outside the pleadings" in resolving a Rule 12(b)(6) motion without converting it into a motion for summary judgment are "the incorporation-by-reference doctrine, and judicial notice under

Federal Rule of Evidence 201").

Hall's argument that the Secretary's counsel's declaration is insufficient to authenticate the documents offered for judicial notice is unavailing. To the extent the Secretary was required to authenticate the documents subject to judicial notice,[1] the Secretary has sufficiently done so. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Counsel's declaration is sufficient to show that the EEO records are what he claims they are, as his representations are based on his "possession of the Department of Justice files concerning this matter," his review of the files, and his "own personal knowledge." (Doc. 11-1 ¶ 1.) *See* Fed. R. Evid. 901(b)(1) (stating that the testimony of a witness with knowledge that "an item is what it is claimed to be" is sufficient to authenticate); *id.* 901(b)(7)(B) (evidence that a "purported public record . . . is from the office where items of this kind are kept" is sufficient to authenticate public records).

The Secretary's counsel does not need to possess personal knowledge concerning the "underlying creation, gathering, or storing of the selected records he attached" to claim that the documents are what he says they are. (Doc. 14 at 9.) *See United States v. Estrada-Eliverio*, 583 F.3d 669, 673 (9th Cir. 2009) (stating that "FRE 901 does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file," citing advisory committee note that public records are "regularly authenticated by proof of custody, without more"); *Burden v. Bar Louie Anaheim, Inc.*, 2016 WL 551993, at *2 (C.D. Cal. 2016) (overruling authentication objection where a declaration attesting that the exhibits were "true and correct copies" and

---

[1]      *Compare Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 631, 639 (9th Cir. 2002) (holding district court did not abuse its discretion in declining to take judicial notice based on a lack of authentication before a *bench trial*), *with EnvTech, Inc. v. Rutherford*, 2023 WL 8716599, at *10 (D. Nev. 2023) (noting that, after the 2010 amendments to Rule 56, "the requirement that evidence submitted [even] at summary judgment must be authenticated has been eliminated"). The point is that, even if the Secretary's motion to dismiss was converted into a motion for summary judgment based on the Secretary's attached documents, the Secretary would not be required to authenticate the documents, so it is unlikely authentication is required for judicial notice at the motion-to-dismiss stage.

that the declarant was "duly authorized and qualified" to certify authenticity, and disagreeing with the plaintiff that facts about creation or formation were required to authenticate a document); *see also United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004) ("The proponent is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." (quotation marks omitted)).

Moreover, review of the attached materials also shows that the "appearance, contents, substance, internal patterns, [and] other distinctive characteristics . . . , taken together with all the circumstances"—the structure of the forms, (Doc. 11-2 at 13–15; *id.* at 23–24), consistency of signatures, (*compare id.* at 9, *with id.* at 13), letterhead consistency, (*compare id.* at 2, *with id.* at 17), and the fact that one document was sent to Hall's counsel's email address, (*compare id.* at 17, *with* Doc. 14 at 1)—support the materials' authenticity.  *See* Fed. R. Evid. 901(b)(4); *Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 2013 WL 12139353, at *5 n.44 (C.D. Cal. 2013) (finding documents sufficiently authenticated under Rule 901(b)(4) where the documents were "on [a] firm's letterhead and [were] structured in the same manner"); *see also United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) (emails were authenticated through circumstantial evidence of email addresses of sender and recipient).  Furthermore, one document bears the seal of the Department of the Interior and the signature of an official on behalf of the Chief of the Office of Equal Opportunity Programs, (Doc. 11-2 at 17–21), which means the document is self-authenticating and does not require any "extrinsic evidence of authenticity."  *See* Fed. R. Evid. 902(1); *Terry v. Wasatch Advantage Grp., LLC*, 2022 WL 17178388, at *4 (E.D. Cal. 2022) (holding three letters "bear[ing] HUD's seal and [that were] signed" were self-authenticating under Rule 902(1)); *Kennedy v. L.V. Sands Corp.*, 2022 WL 3084425, at *5 (D. Nev. 2022) (overruling objection to admission of Department of Labor opinion letter because it bore the "Department of Labor seal on the first page of the letter and a signature").  Moreover, Hall does not dispute the authenticity of these documents; in fact, she states that the exhibits "are portions of the underlying

administrative record." (Doc. 14 at 2.)

Accordingly, the administrative records filed in connection with the Secretary's motion may be considered. *See Greenblatt v. Patel*, 2015 WL 893384, at *11 (E.D. Cal. 2015) ("Courts generally have a dim view of authentication objections presented in the absence of any indication that the record's authenticity is genuinely in dispute . . . ."); *Beckner v. ReconTrust Co., N.A.*, 2012 WL 13013048, at *1 (C.D. Cal. 2012) (taking judicial notice of exhibits attached to motion to dismiss in part because the plaintiff did "not otherwise dispute their authenticity").

### 2.    Documents Attached to Hall's Response

Another related question is whether certain documents Hall included with her response to the Secretary's motion may be considered. (Docs. 14-1, 14-2, 14-3, 14-4.) Exhibit A is a document entitled "Compiled Timeline of Filings for Heidi Hall Cases," (Doc. 14-1 at 2–3); Exhibit B is the signed statement of Rashel Yabeny, who "work[s] for" Hall's counsel and "researched copies of the Reports of Investigation, emails, and the EEOC portal to compile [the] timeline of filings . . . attached to the Response to the Motion to Dismiss," (Doc. 14-2 at 2 ¶¶ 3–4); Exhibit C is what appears to be the first page of a "Request for Production of Documents" dated November 1, 2018, which was directed to Beverly McKnight, the "EEO Point of Contact" by the "Contract EEO Investigator," (Doc. 14-3 at 2); and Exhibit D consists of several emails between Hall, Dallas Hall, and Hall's counsel, (Doc. 14-4 at 2–4). The Secretary argues Exhibits A, B, and D should not be considered, because they "are not within the limited categories of documents the Ninth Circuit has determined that courts may properly consider in a motion to dismiss context." (Doc. 15 at 9.)

The Court infers that the Secretary does not oppose judicial notice of Exhibit C from his lack of objection to it. (*See id.*) Because he does not object, and the document appears to be a record associated with Hall's EEO proceedings, (Doc. 14-3 at 2), judicial notice is proper. *Wallace*, 2022 WL 14746303, at *3. As for the other documents, the Secretary is correct that these cannot be considered without converting the motion into a motion for

summary judgment. *See Khoja*, 899 F.3d at 998. Exhibit A is a timeline compiled by Hall's counsel's office based on many materials that are not before the Court, (*see* Doc. 14-2 at 2 ¶ 4 (explaining the timeline is compiled from "copies of the Reports of Investigation, emails, and the EEOC portal")), and thus is attorney argument that cannot be considered, even if the materials upon which the timeline is based might have been subject to judicial notice if they were submitted with the parties' briefing. *See Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1062 (S.D. Cal. 2007) ("[A]ttorney arguments cannot be offered as evidence in any proceeding, and therefore this Court cannot consider factual evidence that [is] only proffered by counsel, and not explicitly present in either the complaint or any document attached to the complaint.").

Exhibit B is an unsworn statement by an individual in Hall's counsel's office, which cannot be considered. *See* 28 U.S.C. § 1746 (requiring unsworn declarations to be made under penalty of perjury); *Barroca v. Santa Rita Jail*, 2006 WL 571355, at *4 (N.D. Cal. 2006) ("A declaration is not admissible as evidence if not verified as true and correct and signed under penalty of perjury . . . ."). Even if Exhibit B were a proper declaration, however, the facts asserted in it would still not be considered. (Doc. 14-2 at 2 ¶¶ 4, 6, 8.) Although declarations "can be used to bring materials that are properly considered to the attention of the court," courts "regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss . . . if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015); *see also Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1347 (S.D. Cal. 1998) (stating that a court may not consider "material outside the complaint, such as facts presented in briefs, affidavits, or discovery materials" in resolving a motion to dismiss, but instead may only consider documents incorporated by reference or subject to judicial notice).

Exhibit D will also not be considered because the attached emails are not incorporated by reference in the complaint and are not the proper subject of judicial notice. *See Khoja*, 899 F.3d at 998; *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols.,*

*Inc.*, 2013 WL 6073362, at *2 n.1 (N.D. Cal. 2013) (declining to consider the substance of emails "provided as an attachment to the plaintiff's opposition brief" because the court could "only consider the complaint itself in ruling on a motion to dismiss for failure to state a claim"). Accordingly, only Exhibit C will be considered.

Because material outside of the pleadings or documents subject to judicial notice is not considered, the motion to dismiss is not converted into a motion for summary judgment. *See Khoja*, 899 F.3d at 998. Hall's request for discovery under Rule 56(d)(1) to properly respond to a motion for summary judgment is therefore denied. (Doc. 14 at 2.) *See, e.g.*, *Hurst-Castl v. Long Term Cap. P'ship VI, LLC*, 2025 WL 1266736, at *3 (D. Nev. 2025) (denying plaintiff's motion to take discovery before ruling on motion to dismiss because the court did "not consider[] any extrinsic evidence that is not properly subject to judicial notice").

### C.    Exhaustion

Turning to the merits, the Secretary first argues Hall did not file the October 2018 EEO Complaint within 15 days of receiving the NOFI Letter and therefore did not exhaust her administrative remedies as to claims based on her August 2018 failure-to-promote allegations, so she may not bring a court action concerning those allegations. (Doc. 11 at 6.) Although the Secretary agrees Hall timely contacted an EEO counselor, the Secretary argues she filed the October 2018 EEO Complaint 19 days after receiving the NOFI Letter, which was too late. (*Id.* at 7; Doc. 15 at 6.) The Secretary also argues Hall cannot bring any discrimination claims concerning allegations preceding July 9, 2018, because Hall did not contact an EEO counselor within 45 days of any alleged discrimination. (Doc. 11 at 11.)

Hall responds that the Secretary waived the ability to challenge exhaustion because it "has not been raised throughout the administrative process of the last seven years." (Doc. 14 at 6.) She also argues equitable tolling applies because she "alleged ongoing violations." (*Id.* at 7.) Finally, she contends that "any analysis of waiver should be argued on the entire record with the [Park Service's] loss of 2 complaints, delays, missteps, and

1   lack of cooperation taken into account." (*Id.* at 9.)

2        Federal executive agency employees complaining of discrimination based on "race;

3   color; religion; sex; national origin; age; disability; genetic information; . . . pregnancy,

4   childbirth, . . . related medical conditions," or retaliation,[2] typically must "consult a[n]

5   [EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter."

6   29 C.F.R. § 1614.105(a).[3]  The employee must contact the EEO counselor "within 45 days

7   of the date of the matter alleged to be discriminatory or, in the case of personnel action,

8   within 45 days of the effective date of the action." *Id.* (a)(1).  If the matter is not resolved

9   after a final interview between the EEO counselor and the employee, the EEO counselor

10  must inform the employee in writing "of the right to file a discrimination complaint." *Id.*

11  § 1614.105(d).  The complaint "must be filed within 15 days of receipt of" this notice. *Id.*

12  § 1614.106(b).

13       The respective agency is required to dismiss a complaint if it "fails to comply with

14  the applicable time limits . . . unless the agency extends the time limits." *Id.*

15  § 1614.107(a)(2).  If the agency "believes that some but not all of the claims in a complaint

16  should be dismissed" for this reason, the agency must "notify the complainant in writing

17  of its determination, the rationale for that determination and that those claims will not be

18  investigated" and must "place a copy of the notice in the investigative file." *See id.*

19  § 1614.107(b).

20       "Before a federal civil servant can sue [her] employer in court for discriminating

21  against [her] . . . [she] must first exhaust [her] administrative remedies." *Green v.*

22  *Brennan*, 578 U.S. 547, 552 (2016).  "Although the regulatory pre-filing exhaustion

23  requirement at § 1614.105 does not carry the full weight of statutory authority and is not a

24  jurisdictional prerequisite for suit in federal court," "absent waiver, estoppel, or equitable

---

[2]      "Complaints alleging retaliation prohibited by title VII [and the Age Discrimination in Employment Act ("ADEA")] . . . are considered to be complaints of discrimination" for purposes of administrative procedures for executive agency employee complaints.  29 C.F.R. § 1614.103(a).

[3]      Complaints of age discrimination under the ADEA may alternatively be brought first in court. *Id.* § 1614.201(a).

1    tolling, failure to comply with this regulation is fatal to a federal employee's discrimination

2    claim in federal court." *Shelley v. Geren*, 666 F.3d 599, 605 (9th Cir. 2012) (citation

3    modified).  "The limitations-period analysis is always conducted claim by claim" and

4    "begins running on any separate underlying claim of discrimination when that claim

5    accrues." *Green*, 578 U.S. at 563.  Ultimately, however, exhaustion "is a practical and

6    pragmatic doctrine that must be tailored to fit the peculiarities of the administrative system

7    Congress has created," as Congress "never . . . wanted the exhaustion doctrine to become

8    a massive procedural roadblock to access to the courts." *Kraus v. Presidio Tr. Facilities*

9    *Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1045 (9th Cir. 2009) (citation omitted).

10        Hall's retaliation and pattern-and-practice claims both appear to include her non-

11    selection for ASAC positions in August 2018 and allegations of discriminatory actions

12    before then.  (*See* Doc. 1 ¶¶ 25, 26(3), 30, 35, 39 (retaliation claim); *id.* ¶¶ 44–45, 47, 49–

13    51, 53, 60 (pattern-and-practice claim).)  Accordingly, the exhaustion analysis of Hall's

14    claims is conducted on an allegation-by-allegation basis.  *See Green*, 578 U.S. at 563.

### 1.    Allegations Preceding July 9, 2018

16        Again, the Secretary argues that "claims of alleged discrimination that occurred

17    more than 45 days before August 24, 2018 [*i.e.*, July 9, 2018]," which was Hall's "first

18    contact with an EEO counselor, should be dismissed" for failure to timely contact an EEO

19    counselor.  (Doc. 11 at 11 (footnote omitted).)  As mentioned, Hall was required to contact

20    an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or,

21    in the case of personnel action, within 45 days of the effective date of the action."  *See* 29

22    C.F.R. § 1614.105(a)(1).  The Complaint does not establish, and Hall does not expressly

23    argue, that she contacted an EEO counselor concerning the pre-July 2018 allegations and

24    instead argues that (1) exhaustion is inappropriately considered at the motion to dismiss

25    stage, (2) the Secretary has not raised exhaustion "throughout the administrative process

26    of the last seven years," and (3) she "repeatedly complied with the regulatory requirement

27    with diligence and good faith."  (Doc. 14 at 2, 6, 9.)

28        Although a close call, the Secretary's motion to dismiss any claims pertaining to

allegations preceding July 9, 2018, on the basis of lack of exhaustion, is denied at this stage of the case. Exhaustion is a "complex question." *See Perttu v. Richards*, 145 S. Ct. 1793, 1801 (2025) (citation omitted). Further, exhaustion is an "affirmative defense the defendant must plead and prove," and courts may only dismiss a complaint for failure to exhaust "in the rare event that [it] is clear on the face of the complaint." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)); *see also Kraus*, 572 F.3d at 1046 n.7 ("Whether a plaintiff in a Title VII action has timely exhausted her administrative remedies is an affirmative defense, so the defendant bears the burden of pleading and proving it." (citation modified)). This defense is typically resolved at the summary judgment stage. *See, e.g.*, *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 909 n.6 (9th Cir. 2020) ("Although the District raised its exhaustion defense under Rule 12(b)(6), we have said that such a defense should generally be raised on summary judgment."); *Tabaddor v. Holder*, 156 F. Supp. 3d 1076, 1080 (C.D. Cal. 2015) ("Failure to administratively exhaust should be raised by summary judgment motion except where that failure is clear on the face of the complaint.").[4] In fact, a plaintiff "is not required to say anything about exhaustion in his complaint," because "failure to exhaust is an affirmative defense." *Albino*, 747 F.3d at 1169.

Although Hall has not alleged or asserted that she contacted an EEO counselor within the required time for her pre-July 2018 allegations, it is not clear from the face of the Complaint and documents subject to judicial notice that Hall failed to exhaust her administrative remedies as to these allegations. Thus, this is not the "rare event" contemplated by the Ninth Circuit warranting dismissal. *Id.* at 1166.

Furthermore, analysis of this question will require consideration of deeply factual

---

[4] Although *Albino* considered exhaustion for purposes of the Prison Litigation Reform Act ("PLRA"), 747 F.3d at 1165–66, it is nevertheless appropriately applied in the employment discrimination context. *See id.* at 1171 ("[W]e believe that the basic procedure outlined here—under which a party may move for summary judgment on the exhaustion question, followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion—is appropriate in these other contexts as well."); *Marcos v. U.S. Dep't of the Navy*, 2023 WL 6283257, at *2 (D. Haw. 2023) ("Although *Albino* addressed exhaustion under the PLRA, the Ninth Circuit extended that holding to other contexts as well.").

- 18 -

issues including claim accrual, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 & n.7 (2002) (noting that there "may be circumstances where it will be difficult to determine when the time period should begin to run" for discriminatory or retaliatory acts), and the scope of the EEO investigation and administrative proceeding, *see Rose v. Air Liquide USA LLC*, 2025 WL 509246, at *6 (D. Ariz. 2025) (noting that a court may consider allegations that are "outside of the scope of the administrative charge" if they are "like or reasonably related to the allegations contained in the EEOC charge" (citation omitted)), as well as legal issues that turn on factual or record questions—waiver, equitable estoppel, and equitable tolling, *see Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007) (noting that equitable tolling "often focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant" (citation omitted)); *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (explaining factors relevant to an equitable estoppel analysis, including a "plaintiff's actual and reasonable reliance on the defendant's conduct or representations" (citation omitted)); *Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995) (finding waiver where the EEOC ruled the complaint was timely).

The administrative record has not been submitted, nor has much evidence, so it is premature to resolve what Hall did or did not litigate—and therefore did or did not exhaust—before the Park Service. *Tompkins v. Stephens*, 2010 WL 703074, at *2 (E.D. Cal. 2010) ("[W]here the facts supporting the affirmative defense are not established by the allegations of the complaint and instead require the presentation of evidence outside the pleadings . . . [a] motion raising the defense is properly considered under the standards for summary judgment, with disputed material factual issues reserved for trial."); *id.* n.3 (noting that "[m]otions challenging exhaustion of administrative remedies frequently rely on declarations and exhibits that are extrinsic to the complaint").

Although the Secretary argues it is Hall's burden to prove waiver, equitable estoppel, or equitable tolling, the Secretary must first sufficiently plead or prove that Hall failed to exhaust her claims. *See DC Comics v. Pac. Pictures Corp.*, 2012 WL 4936588, at *9 (C.D. Cal. 2012) ("It is not Plaintiff's duty to disprove Defendants' affirmative

defenses, but rather, it is Defendants who bear the burden of proving the applicability of their affirmative defenses."). Because the Secretary did not meet his burden to show that this is the "rare event" in which lack of exhaustion is clear from the Complaint, dismissal on this ground is not appropriate. *See Albino*, 747 F.3d at 1166. This issue will be better considered at summary judgment. *See McIntyre*, 976 F.3d at 909 n.6; *Tabaddor*, 156 F. Supp. 3d at 1080.

### 2. August 2018 Failure-to-Promote Allegations

Similarly, Hall's claims pertaining to the Park Service's failure to promote her in August 2018 will not be dismissed at this time. The record is clear—and Hall does not dispute—that she filed her EEOC complaint outside the regulatory 15-day window. (Doc. 1-1 at 3, 7; Doc. 1-2 at 2; *see* Doc. 14 at 10.) It is not clear from the face of the Complaint or the documents subject to judicial notice, however, that this necessarily results in a finding of lack of exhaustion. Hall may be able to establish that an exception applies, given her assertion that the Park Service has not raised the issue of timeliness at any point during the administrative process, which spanned years, and her assertion that she was unable to file her complaint electronically despite her best efforts. (Doc. 14 at 10–11.)

The Secretary argues Hall has failed to allege any facts in her Complaint that could support a finding of waiver, equitable tolling, or equitable estoppel. (Doc. 15 at 6–7.) But the Secretary has not persuasively argued that this is an appropriate assessment of the parties' respective burdens at the motion to dismiss stage. Under Ninth Circuit precedent, Hall need not have said "anything about exhaustion in [her] complaint," because failure to exhaust is an affirmative defense. *Albino*, 747 F.3d at 1169. Hall therefore should not be faulted for her failure to allege facts in the Complaint that would establish waiver, equitable tolling, or equitable estoppel, or to anticipate the Secretary's exhaustion argument that was never raised in the several-year history of this case at the administrative level. *See DC Comics*, 2012 WL 4936588, at *9.

Hall also raises a colorable argument that the Secretary waived a challenge to timeliness of these claims. (Doc. 14 at 11.) *Compare Boyd v. USPS*, 752 F.2d 410, 414

(9th Cir. 1985) (holding the "mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination"), *with Girard*, 62 F.3d at 1247 (distinguishing *Boyd* and holding an agency waived a timeliness challenge where the EEOC decided a complaint was timely).

Ultimately, although Hall's underdeveloped arguments concerning waiver, equitable tolling, and equitable estoppel are not excused, (Doc. 14 at 6–10), more evidence is needed than what was included in the parties' briefing to make an exhaustion determination at this stage, (*id.* at 2). Hall may have been limited in her ability to properly respond to the Secretary's arguments concerning waiver, equitable tolling, and equitable estoppel, given the narrow categories of documents outside the Complaint that may be considered in ruling on the motion to dismiss. *See Khoja*, 899 F.3d at 998; *Allison*, 999 F. Supp. at 1347 (stating that a court may not consider "material outside the complaint, such as facts presented in briefs, affidavits, or discovery materials" in resolving a motion to dismiss). Hall may have facts that she could put forth in a declaration or other evidence that could establish an exception to exhaustion. It appears she attempted to do so, through exhibits which cannot be considered at this stage. *See* Section IV.B.2, *supra*.

Because exhaustion is an affirmative defense that will, based on Hall's colorable arguments, require consideration of facts outside of the pleadings and documents subject to judicial notice, dismissal is not warranted. *See Albino*, 747 F.3d at 1166; *see also Rat Pack Filmproduktion GMBH v. RatPac Ent., LLC*, 2024 WL 4452483, at 5 (C.D. Cal. 2024) ("The motion to dismiss stage . . . is not the time to dive into the merits of a claim or make other fact-intensive inquiries."); *Angelucci v. Mayorkas*, 2021 WL 4523690, at *4 n.7 (S.D. Cal. 2021) ("[F]actual disputes are not meant to be resolved at the motion to dismiss stage."). The parties may raise the issue again at summary judgment. *See McIntyre*, 976 F.3d at 909 n.6; *Tabaddor*, 156 F. Supp. 3d at 1080.

### D.    Hostile Work Environment

The Secretary argues that any hostile work environment claim Hall brings should

be dismissed because she did not allege sufficient facts to state a claim. (Doc. 11 at 12–14.) As discussed in this Order, Hall is limited to the claims expressly asserted in her Complaint. *See* Section IV.A, *supra*. Hall did not expressly allege a hostile work environment claim, so it is not part of the Complaint. (*See generally* Doc. 1.) Accordingly, the Secretary's motion to dismiss this "claim" is denied as moot. This ruling is without prejudice to the Secretary opposing addition of or moving to dismiss this claim if Hall amends her Complaint to assert such a claim.

## E.     Pattern and Practice of Discrimination

The Secretary argues Hall may not allege a pattern-and-practice claim because it is "not a cognizable claim or theory for [her] to proceed on." (Doc. 11 at 14.) The Secretary notes that, although the Ninth Circuit has not addressed this issue, "at least six other circuit courts have held that the pattern and practice method of proving discrimination is only available to class plaintiffs or the EEOC, and is not available to individual plaintiffs." (*Id.* at 14–15 (collecting cases).)

The Secretary is correct that Hall may not bring an individual pattern-and-practice claim. In *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012), the Second Circuit held that the "pattern-or-practice method of proof is not available to nonclass, private plaintiffs" in Title VII claims. *Id.* at 150.[5] The court reasoned that the term "pattern or practice" only appeared in Title VII in a section permitting the government to pursue injunctive relief against an employer, 42 U.S.C. § 2000e-6. *Chin*, 685 F.3d at 147. Although the Supreme Court endorsed using "pattern or practice" as a method of

---

[5]     Although these decisions concern discrimination claims under Title VII, their reasoning is equally applicable to claims for age discrimination under the ADEA. *See Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986) ("The criteria applied to a Title VII discrimination claim also apply to claims arising under the ADEA."); *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1458–59 (9th Cir. 1985) (applying *McDonnell Douglas* framework for disparate treatment cases to claims under the ADEA), *overruled on other grounds as recognized in Opara v. Yellen*, 57 F.4th 709, 722 n.10 (9th Cir. 2023); *Doheny v. Int'l Bus. Machs., Corp.*, 714 F. Supp. 3d 342, 360 & n.8 (S.D.N.Y. 2024) (applying *Chin* to ADEA claim and noting "the language of Title VII and the ADEA are sufficiently similar that courts typically apply interpretations of Title VII to the ADEA"). The reasoning is also applicable to claims by federal employees. *See* 29 C.F.R. § 1614.103(a) (providing that complaints of "employment discrimination and retaliation prohibited by title VII [and] the ADEA" are "processed in accordance with" the regulations).

proof, "[t]his method of proof . . . originated in the class action context." *Id.* at 147–48. The *Chin* court declined to permit private plaintiffs to use the pattern-or-practice method because "[s]uch an extension would allow nonclass private plaintiffs who have shown a pattern or practice of discrimination (but have not made out a disparate impact claim) to shift the burden to employers to prove that they did not discriminate against a particular individual," which would conflict with the general rule that a plaintiff must "establish each element of his or her claim." *Id.* at 149; *see also Cooper v. Fed. Rsrv. Bank*, 467 U.S. 867, 876 (1984) ("The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking." (quotation marks omitted)); *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) ("[A] pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case.").

The *Chin* court also noted that "all of [its] sister circuits to consider the question . . . held that the pattern-or-practice method of proof is not available to private, nonclass plaintiffs." *Chin*, 685 F.3d at 149–50 (collecting cases). Thus, the court held that "[o]utside the class context, . . . private plaintiffs may not invoke the [pattern-or-practice] method of proof as an independent and distinct method of establishing liability." *Id.* at 150.

The Eleventh Circuit came to this conclusion under different reasoning, explaining there were several issues that warranted the result that "private pattern or practice claims for [declaratory and injunctive] relief [and back pay] must be litigated either as class actions or not at all." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 967 (11th Cir. 2008), *abrogated on other grounds as recognized in Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020). First, without class certification under Rule 23, named

plaintiffs "lack[ed] standing to represent . . . absent unnamed class members." *Id.* at 968. Second, "[p]otential class members need[ed] to know where they stand" as to whether they must "proceed with their own lawsuits." *Id.* Third, and "[m]ost important, perhaps, [were] the potential res judicata and collateral estoppel issues that would arise if the law permitted an individual to prosecute a pattern or practice claim without formally representing all similarly-situated employees." *Id.* at 968–69. Whether a class was certified or not, unnamed class members could be barred from later challenges if the employer prevailed. *Id.* at 969.

This authority is persuasive, and several courts in this Circuit have reached the same conclusion. *See, e.g.*, *Boltz v. PeaceHealth*, 2025 WL 552582, at *6 (D. Or. 2025); *Herrera v. Serv. Emps. Int'l Union Loc. 87*, 2013 WL 12324535, at *5 (N.D. Cal. 2013); *Walech v. Target Corp.*, 2012 WL 1068068, at *6 (W.D. Wash. 2012). Notably, Hall does not respond to the Secretary's argument or engage with the weight of authority holding this claim is unavailable to her. *See, e.g.*, *Oester v. Wright Med. Tech., Inc.*, 2021 WL 3742439, at *5 (D. Ariz. 2021) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument." (citation omitted)).

Accordingly, Hall's pattern-and-practice claim is dismissed. Hall is permitted, however, to rely on evidence of a pattern or practice of discrimination to support any claims that the Park Service discriminated against her individually. *See Chin*, 685 F.3d at 150 ("Evidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment or . . . disparate impact claim."); *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990) (stating that "evidence of a pattern and practice can only be collateral to evidence of specific discrimination against the actual plaintiff" (quotation marks omitted)).

## F.    Handling of EEO Complaints

The Secretary next argues that, to the extent Hall "intend[ed] to raise" mishandling of her EEO complaints "as part of her discrimination claims, she fails to state a claim as there is no right of action for the alleged deficiencies in processing an EEO complaint."

(Doc. 11 at 16.)  It is unclear whether Hall's retaliation claim is premised in part on the handling of her EEO complaints.  (*See* Doc. 1 ¶ 31 (alleging a "summary decision deprived Hall of discovery" and that a "discrimination complainant such as Ms. Hall[] has the 'right' to virtually all information and documents").)

Nonetheless, to the extent Hall bases her retaliation claim in part on handling of her EEO complaint, the Secretary is correct that it must be dismissed because such a claim is not available against the EEOC or a federal agency standing in the EEOC's shoes.  *See Ward v. EEOC*, 719 F.2d 311, 313 (9th Cir. 1983) ("Congress neither expressly nor impliedly provided for an action against the EEOC for negligence, and the EEOC's nonfeasance is not reviewable under the Administrative Procedure Act.");  *Hill v. England*, 2005 WL 3031136, at *3 (E.D. Cal. 2005) (rejecting argument that claim for mishandling of EEOC claim could proceed against a federal employer, because "[i]n cases involving claims against federal agencies [for failure to investigate], the agency itself is required to conduct the EEO investigation in lieu of the EEOC," so the "agency stands in the same position as the EEOC"); *see also Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 96 (D.D.C. 2011) (stating that Title VII "creates only a cause of action for discrimination, not an independent cause of action for the mishandling of an employee's discrimination complaints" (citation modified)).

### G.    Age Discrimination

The Secretary argues that Hall's "discrimination claims include allegations that she was discriminated against on the basis of her age," but argues that any such claim is not proper because it is asserted under Title VII, not the Age Discrimination in Employment Act ("ADEA").  (Doc. 11 at 16; Doc. 15 at 8–9.)  Hall does not expressly assert a separate claim for age discrimination, but even if she did, the failure to cite the ADEA would likely not alone warrant dismissal.  *See Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129, 1138 (C.D. Cal. 2022) ("In general, a failure to identify the proper statute identifying [a] cause of action is not fatal to a complaint.").  Nevertheless, because Hall has not asserted a claim under the ADEA, the Secretary's argument need not be addressed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### H.    Emotional Distress

Finally, the Secretary argues that Hall may not recover emotional distress damages because such damages are preempted by Title VII.  (Doc. 11 at 17.)  The Secretary is incorrect.  *See, e.g.*, *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009) ("[T]he Civil Rights Act of 1991 made available compensatory damages for emotional pain and suffering and punitive damages under Title VII.").  Accordingly, the Secretary's motion as to Hall's request for emotional distress damages is denied.

### I.    Leave to Amend

The only claim dismissed in full is Hall's pattern-and-practice claim.  Because Hall may not pursue such a claim on an individual basis, leave to amend this claim is not granted.  *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) ("Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile." (citation omitted)).  She may also not amend for any retaliation claim premised on the handling of her EEO complaints, as such a claim is not available.

However, the allegations in Hall's pattern-and-practice claim relate in part to individual allegations of discrimination against her, which might be viable.  Because Hall could amend her complaint to assert individual claim(s) of discrimination that do not rely exclusively on a pattern-or-practice theory, Hall is given leave to amend her complaint to assert one or more individual discrimination claims.  Hall is limited, however, to sex and age discrimination claims, because these are the express theories upon which she based her pattern-and-practice claim.  (Doc. 1 at 7.)[6]

If Hall asserts any new claims not contemplated by this Order without Defendants' consent or leave of this Court, those claims may be stricken.  *See, e.g.*, *Kihagi v. City of West Hollywood*, 2015 WL 13914871, at *1 (C.D. Cal. 2015) ("When a court grants leave to amend with a limited scope, and moving parties would like to add claims or parties not

---

[6]    Hall also raised a retaliation theory in her pattern-and-practice claim, (Doc. 1 at 7), but the Complaint already contains a separate claim for retaliation, (*id.* at 5).

authorized by the court's leave to amend, moving parties are required to seek leave of the court to extend the scope of the leave."); *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 4285006, at *3 (N.D. Cal. 2010) ("[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken.").

Accordingly,

**IT IS ORDERED** that the Secretary's Motion to Dismiss (Doc. 11) is **granted in part and denied in part**.  Hall's pattern-and-practice claim and any retaliation theory premised on handling of her EEO complaints are dismissed without leave to amend.

**IT IS FURTHER ORDERED** that Hall may file a First Amended Complaint ("FAC") within **14 days** of this Order to assert individual claims of sex or age discrimination only.  Consistent with LRCiv 15.1, Hall shall file, concurrently with any FAC, a notice of filing the amended pleading that attaches a copy of the amended pleading indicating in what respect it differs from the Complaint.  If Hall does not file a FAC within this period, the case will proceed on Hall's remaining claim for retaliation.

Dated this 15th day of August, 2025.

Honorable Sharad H. Desai
United States District Judge